J-S79016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.B., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1182 EDA 2016 |

Appeal from the Order Entered February 24, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000319-2015

BEFORE: GANTMAN, P.J., MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY MOULTON, J.: **FILED DECEMBER 07, 2016**

E.B. ("Child"), through her child advocate/guardian *ad litem*, appeals from the order entered February 24, 2016, in the Philadelphia County Court of Common Pleas. This order, in part, vacated the appointment of the Court Appointed Special Advocate ("CASA") and directed no contact with potential adoptive parents, the Ls, and that their home no longer be considered as a placement resource until further order of court.[1] In addition, in vacating the

_____

[1] This order maintained Child's placement in general foster care and the goal of reunification, and provided for visitation between Child and her sibling. In addition, the court instructed that the case not be transferred from the Department of Human Services ("DHS'") to the Department of Public Welfare ("DPW"), Child not to be taken out of the jurisdiction, the Interstate Compact on the Placement of Children ("ICPC") process be discontinued, and Adoptions from the Heart no longer be involved. DHS was further ordered to conduct a home evaluation of Child's former kinship provider, C.G., within thirty days. Permanency Review Order, 2/24/16.

CASA appointment, the court declined to allow the CASA to be called as a witness and denied admission of the CASA report. After review, we quash Child's appeal.

The trial court summarized the relevant procedural and factual history as follows:

[In October, 2014], [DHS] received a General Protective Services Report ("GPS") alleging that when E.O. ("mother") gave birth to E.B., E.B. tested positive for methadone and opiates; that E.B. had a high Neonatal Abstinence Scoring and had to be admitted to the Neonatal Intensive Care Unit ("NICU") of a hospital. Further, it was alleged that mother was unaware that she was pregnant until August 2014 and had been using heroin throughout the summer. The report was substantiated.

On the aforementioned date, when DHS visited Einstein Medical Center Montgomery ("hospital"), where E.B. was born, DHS learned it would still be a few more weeks before E.B. could be discharged.

It was further reported to DHS that mother had been previously arrested on September 8, 2014, and was, at the time of the GPS report, incarcerated at the Montgomery County Correctional Facility ("correctional facility") for violating the terms of her probation; that she was scheduled for release from that facility some time in November 2014; that upon her release, mother was to reside with M.B. ("father"), who was to provide for E.B. until mother's release.

On October 25, 2014, mother was discharged [from] the hospital and transported back to the correctional facility.

Subsequently, on October 29, 2014, per a telephone conversation with the hospital staff, DHS learned that E.B. had been moved to NICU; that hospital staff had administered morphine to E.B. to alleviate the symptoms of her withdrawal; and that there was no anticipated date of discharge for E.B.

Subsequently, DHS learned that father was the perpetrator in a substantiated GPS report and that father had numerous arrests for driving under the influence.

On October 29, 2014, DHS telephoned father to inform him that he would be unable to care for E.B. until DHS implemented the appropriate services in his home. Father agreed to accept services and provided DHS with the name of [C.G.], a paternal cousin, as a possible placement source for E.B.

On November 5, 2014, DHS learned that E.B. would be ready for discharge from the hospital the following week.

On November 6, 2014, DHS visited [C.G.]'s home and conducted a successful home assessment and obtained the appropriate clearances.

On November 16, 2014, E.B. was discharged from the hospital to [C.G.]'s care with a safety plan implemented by DHS.

On December 4, 2014, DHS implemented In-Home services through Community Umbrella Agency ("CUA") and Catholic Social Services.

On December 11, 2014, a Family Support Conference was held where father disclosed that he had a history of taking pills; that he drank excessively; that he was currently attending meeting[s] to address his drinking problems; and that he did not believe his drinking would interfere with his ability to care for E.B.

On January 14, 2015, mother informed DHS via telephone that she was released from the correctional facility two days prior; that she was currently on probation; and that she was residing with father. At that time, DHS informed mother that she needed to complete parent training and drug and alcohol treatment.

Thereafter, on February 6, 2015, DHS filed a dependency petition on behalf of E.B., based on mother and father's present inability to care for E.B.

On February 25, 2015, a pre-hearing conference was held and all parties agreed to adjudicate the child dependent based on present inability and that the commitment to DHS should stand.

Pursuant to the adjudication of E.B., a kinship care referral was made for [C.G.] and supervised, liberal visits were to be held at her home, supervised by her and observed by CUA once a month.

The matter was then listed on a regular basis before judges of the Philadelphia Court of Common Pleas – Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351, and evaluated for the purpose of reviewing the permanency plan for the child.

Thereafter, on September 16, 2015, a permanency review hearing was held before the Honorable Vincent L. Johnson. Judge Johnson ordered that [the Ls] be explored as a pre-adoptive resource for E.B., and counsel for mother and father to explore signing voluntary relinquishment forms with them.

On October 27, 2015, a Petition for Order to Transfer Legal Custody of Child From DHS to DPW Licensed Child Placement Agency, filed by parents, was heard before the Honorable Vincent L. Johnson.

On November 3, 2015, DHS filed its Answer to Parents' Petition For Order To Transfer Legal Custody Of Child From DHS T[o] DPW-Licensed Child Placement Agency.

Subsequently, on November 4, 2015, a permanency review hearing was held before Judge Johnson who ordered that the [Ls] have supervised visits twice a month at the agency and that the [ICPC] be processed forthwith.

Then, on December 16, 2015, a permanency review hearing was held before Judge Johnson who ordered that the ICPC be processed forthwith. Judge Johnson further ordered that New Jersey Department of Youth and Family Services complete a home visit for the [Ls]. It was further ordered that if the [Ls'] home was cleared and all parties were in agreement, E.B. would go on an extended visit to the [Ls'] home in New Jersey.[2]

On January 29, 2016, a permanency review hearing was held before the Honorable Lyris Younge who found that CUA had not made reasonable efforts to finalize E.B.'s permanency plan. Judge Younge ordered the removal of CUA from the case and that the extended visit with the [Ls] should be terminated; that

_____

[2] On December 24, 2015, the Honorable Joseph Fernandes signed an emergency order granting a 30-day extended visit with the Ls.

E.B. should not be brought to New Jersey and there be no further visits with the [Ls] at this time. Judge Younge further ordered that the ICPC process could continue.[3]

On February 24, 2016, a contested permanency review hearing was held before Judge Younge who ordered that the ICPC be discontinued immediately; that the [Ls] have no further contact with E.B.; that Adoptions from the Heart, the adoption agency representing the [Ls], cease all involvement in this case; and the home of the [Ls] was to be no longer considered as a placement for E.B., until further order of the court.[4]

Corrected Opinion, 5/3/16, at 1-5 (unpaginated) ("1925(a) Op.").

On March 28, 2016, Child, through her child advocate/guardian *ad litem*, filed a notice of appeal,[5] along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Child raises the following issues for our review:

1. Did the Juvenile Court err in refusing to permit the child through her child advocate/guardian *ad litem*, and Court Appointed Special Advocate to present evidence regarding her permanency plan and best interests, thereby denying her due process as well as failing to ascertain to the fullest extent possible the views of the child as required by, inter alia, 42 [Pa.C.S. § 6351(e)(1)]?

_____

[3] On February 5, 2016, DHS filed a motion for reconsideration of the court's January 29, 2016 order. The trial court denied this motion without hearing by order dated February 5, 2016.

[4] The trial court also removed the CASA from the case.

[5] Thirty days from entry of the February 24, 2016 order was Friday, March 25, 2016. **See** Pa.R.A.P. 903(a) (notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken). However, as Friday, March 25, 2016, was Good Friday, and the Philadelphia County Court of Common Pleas was closed, Child filed this appeal on Monday, March 28, 2016.

2. Did the Juvenile Court err in vacating the Court Appointed Special Advocate (CASA)?

3. Did the Juvenile Court err in refusing to allow the February 24, 2016 CASA report to be entered into the record despite the Court, on the record, having announced that she had read the report prior to the hearing?

4. Was it an abuse of judicial discretion for the lower Court, *sua sponte*, without regard for the permanency plan approved by her predecessor judge, and without permitting the Child Advocate/Guardian Ad Litem to present evidence or testimony on behalf of the child and the child's needs to Order:  the removal of CASA; that the child cease all contact with kinship and adoptive resources Mr. & Mrs. L.; that the ICPC process be discontinued; and that Mr. & Mrs. L. no longer be considered as a resource for Adoption until further order of the court?

5. Does the Superior Court have jurisdiction to hear this appeal?

Child's Br. at 5-6.

Before proceeding to a review of the merits, we must determine whether we have jurisdiction.  In particular, we must examine whether the order in question, the permanency review order of February 24, 2016, is an appealable order.  Because "we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'"[6]  ***Gunn v. Automobile Ins. Co. of Hartford, Connecticut***, 971 A.2d 505, 508 (Pa.Super. 2009) (quoting

---

[6] Child was the only party at the permanency review hearing who filed a brief with this Court.  DHS submitted a letter stating that it "will not be filing a brief in this matter."

*Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa.Super. 2000)). It is well-settled that, "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa.Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b). *See also In re H.S.W.C.-B & S.E.C.-B.*, 836 A.2d 908, 911 (Pa. 2003) (With regard to dependency matters, "An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered.") (citation omitted).

Instantly, Child does not assert that the February 24, 2016 permanency review order is a final order, as it does not grant or deny a goal change or terminate or preserve parental rights.[7, 8] Rather, Child avers that

---

[7] A review of the record reveals that a petition to terminate parental rights and for a goal change has not been filed.

[8] While we recognize the expansion of those dependency orders which are deemed final, appealable orders under *In re H.S.W.C.-B. & S.E.C.-B.*, we find the instant matter distinguishable. Not only did the trial court indicate that the order in question is not a final order, **see** 1925(a) Op. at 6 (unpaginated), Child does not dispute that the order is not a final order. Moreover, the trial court also examined whether the order was collateral and/or the appeal was interlocutory as of right or by permission and concluded the appeal should be quashed. *See* 1925(a) Op. at 6-7 (unpaginated). Further, upon review, in disputing the court's actions with regard to the CASA, Child is essentially challenging the trial court's actions with regard to potential adoptive parents, the Ls, who importantly are not parties to the matter. Critically, these actions, in particular, excluding the Ls' home from consideration as a placement resource, were qualified by the court, **see** Permanency Review Order, 2/24/16, thus allowing the potential for consideration in the future. The court, however, in an effort to not circumvent the dependency process, explored the option of reunification and
*(Footnote Continued Next Page)*

the order is appealable pursuant to the collateral order doctrine.  *See* Pa.R.A.P. 313(a) (providing that an appeal may be taken as of right from a collateral order of a lower court).  "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."  Pa.R.A.P. 313(b).

Child, through her child advocate/guardian *ad litem*, argues that the February 24, 2016 order meets the requirements of the collateral order doctrine.  Child suggests that the removal of the CASA, which prohibited Child from presenting evidence, is separate from, and collateral to, the dependency itself.  Child's Br. at 34.  Child further avers that the court impinged upon her right "to meaningfully participate" in the dependency hearing.  *Id*.  Lastly, Child posits that "this Constitutionally protected right would be lost if the lower court continued to deny the child advocate the opportunity to participate in the hearing."  *Id*. at 35.

Upon review, we conclude that that the trial court's February 24, 2016 order does not meet the requirements of the collateral order doctrine.  While Child argues that the February 24, 2016 order is appealable because it infringed upon her right to present evidence, the right to participate and

*(Footnote Continued)* ───────────

further investigated Child's former kinship provider, C.G.  *See* 1925(a) Op. at 8-9 (unpaginated); Permanency Review Order, 2/24/16.

present evidence during dependency proceedings is not separate from, or collateral to, those proceedings. In addition, Child's right will not be lost if postponed until final judgment. Child can raise the instant claims upon the determination of a goal change/termination petition, if and when filed, or at the conclusion of the dependency matter.

Accordingly, the February 24, 2016 order is not a collateral order pursuant to Pa.R.A.P. 313(b). This Court lacks jurisdiction to consider Child's claims, and the appeal must be quashed.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2016